### John Taylor *v.* The State.

1. Principal Offenders. — To constitute a principal offender under the Code of this State, it is not necessary that the accused aided in the illegal act, provided he advised or agreed to the commission of the offence, and was present when it was committed. His agreement to the commission of the offence may be inferred from his acts.

2. Charge of the Court. — No formula for an instruction on circumstantial evidence has been prescribed or specially indorsed by this court. The ruling in *Harrison* v. *The State*, 6 Texas Ct. App. 42, was not intended to do so, and it is to be understood as holding merely that in a proper case an appropriate instruction on the subject should be given, especially when requested.

3. Circumstantial Evidence. — The practical test of the sufficiency of evidence, circumstantial or otherwise, is its ability to satisfy the understanding and conscience of the jury, and to produce in their minds a moral certainty of the defendant's guilt, beyond a reasonable doubt.

APPEAL from the District Court of Denton. Tried below before the Hon. J. A. CARROLL.

The appellant was charged by the indictment with the murder of one J. S. Beard, on December 27, 1879, by shooting him with a pistol. The jury convicted him of murder in the second degree, and assessed as his punishment a term of ten years in the penitentiary.

It appears from the evidence that, the night before Beard was killed, a quarrel occurred between him and Tom Taylor, a brother of the appellant, and that they agreed to meet the next morning at a field belonging to the Taylors. This field lay close by the house of one Glasscock, where the deceased had his home ; and, at a distance of about fifty yards from Glasscock's house there was a gap in the fence which enclosed the field. Immediately at this outlet the deceased was found, early in the forenoon of the day alleged in the indictment. He was prostrate upon his face, and had received four gunshot wounds, from which he died within two minutes after Miss Martin reached him.

Miss Martin was an inmate of the Glasscock household, and the only witness who saw any of the incidents immediately connected with the homicide. She testified that between eight and nine o'clock in the morning, while she was passing from the kitchen to the main room, she heard three gunshot reports in the direction of the gap in the fence. When she reached the main room she heard the last shot, and, looking through a large crack in the house, she saw the appellant and his brother Tom, and then saw Beard, the deceased, who was falling when she first observed him. The appellant and his brother Tom each had a two-horse team and wagon, and she thought they had come through the gap in the fence. They drove off in a lope, and each of them looked back towards Beard after they had gone a hundred yards or so. Witness went immediately to Beard, and got to him before the Taylors got out of sight. Beard

was lying on his face, and was not quite dead, but died within two minutes after witness reached him.   The appellant and his brother drove off in the direction of Mr. Beck's, a neighbor.   Witness, the deceased, and Mr. Glasscock had agreed to go to the village of Pilot Point that morning, and Glasscock had gone to find the horses, having arranged to drive them to Beck's, where the deceased was to help him pen them.   The deceased told the witness that he and Tom Taylor were to meet that morning in the field, and she, having heard of the quarrel between Tom Taylor and the deceased, advised him not to meet Taylor according to the agreement.

From other witnesses it was elicited that the deceased, before he met the Taylors at the gap, went to Beck's and borrowed a loaded pistol.   From Beck's he could see the approach of the Taylors from their home towards the field, and while there he seemed to keep a watch in that direction. After leaving Beck's he was not seen again by any witness previous to the shooting.   When found, after he was shot, his coat was buttoned closely around him, and the loaded pistol was in the inside breast-pocket, where he placed it when he borrowed it from Beck.   Doubtless, the jury deduced from the evidence the conclusion that he was making no effort to use the pistol when he was shot down by one or both of the Taylors, each of whom was armed with a pistol. There was evidence that two of the shots were too nearly simultaneous to have been fired by the same person.   Tom Taylor fled the country, but the appellant made no effort to escape.

The opinion of the court indicates the exceptions taken by the defence to the charge given to the jury, and the nature of the instructions asked and refused.

No brief for the appellant has reached the reporters.

*Thomas Ball*, Assistant Attorney-General, for the State

Clark, J.    The particular paragraph of the charge complained of is almost a literal extract from the Penal Code, which provides as follows : —

"Any person who advises or agrees to the commission of an offence, and who is present when the same is committed, is a principal thereto, whether he aids or not in the illegal act."    Penal Code, art. 78.

The evidence adduced upon the trial tended to support the theory that the homicide was committed by Tom Taylor, the brother of appellant, and that the appellant was present, and, knowing the unlawful intent of his brother, aided him by acts and perhaps encouraged him by words.    His presence may be regarded as indisputable, and it is an inference fairly and naturally arising from the evidence that he at least agreed to the commission of the offence.    The aid rendered — and the evidence to that effect must be assumed as true upon appeal — must have been preceded by an agreement to aid before its rendition.    Such agreement may be implied from acts as well as from positive declarations.    Upon this state of the case an instruction cannot be regarded as erroneous or inapplicable which informs the jury that if they " should find that the defendant had advised, consented, or agreed to the killing of said Beard by said Tom Taylor, and was actually present when said Beard was so killed, then you will find the defendant guilty of murder in the second degree ; " such charge being coupled with full explanations as to the characteristics of that grade of homicide, and as to other pertinent facts which, if found true, would render the defendant upon trial a principal in law.

The charge of the court upon the law of circumstantial testimony fully informed the jury upon that branch of the law, although it is not clear to us that such a charge was essential.    The appellant's presence at the scene of the homicide was established by competent evidence of a positive nature, and the active participancy of more than one person in the perpetration of the homicide was equally es-

tablished. It was well enough, however, for the court to have given the appellant the benefit of an instruction resting upon a theory that his inculpation and identification with the homicide were based upon circumstantial testimony, and upon that view of the case the legal obligation resting upon the court to give the jury an appropriate instruction was fully met and discharged.

The first instruction requested by appellant, and refused by the court, was perfectly embodied in the main charge, and the second instruction requested has never been regarded as law in this State, and necessary to be given to a jury upon the trial of a case dependent upon circumstantial evidence. In such case, each fact in a chain of facts from which the main fact in issue is to be inferred, must, it is true, be established by competent evidence; which is merely another way of stating the proposition that each fact in such chain must be established in proof by evidence, for any other evidence save competent evidence is, in legal contemplation, no evidence. But these isolated facts need not be proved by the same weight and force of evidence as if each one were the main fact in issue; neither need all the facts in evidence before the jury be consistent with each other and the main fact to be proved. The only rule which can be regarded as of practical application in the administration of the law is, that the legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury, and to produce in their minds a moral certainty of the guilt of the prisoner, to the exclusion of every reasonable doubt. When a jury is substantially informed of this requisite, as was done in this case, the law is satisfied. *Brown* v. *The State*, 23 Texas, 195. In *Harrison's Case* (6 Texas Ct. App. 42) it was not intended by this court to prescribe any particular formula for a charge upon circumstantial evidence, or to indorse as literally accurate and exact the instruction requested, but merely to indicate that in a proper case some charge upon circumstantial evidence should not

be ignored, especially when requested. The opinion must, therefore, be restricted to that extent.

From a portion of the evidence adduced upon the trial, the jury might have concluded that the appellant was merely a witness to the *rencontre*, and was not culpable. Other portions of the evidence amply support the conclusion that he was a criminal participant. The jury have seen fit to adopt the latter as the true conclusion ; and, amid this conflict, their verdict, being not unsupported, must stand upon appeal. The judgment is affirmed.

*Affirmed.*